UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WALTER MORAN | No. 21 CR 633-2<br><br>Judge Edmond E. Chang |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully submits this sentencing memorandum with respect to defendant Walter Moran. For the reasons set forth below, a sentence at the high end of the Guidelines range of 188 to 235 months, is warranted and sufficient, but not greater than necessary, upon consideration of the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

**I. Background**

On April 18, 2024, the grand jury returned a second superseding indictment charging the defendant, Walter Moran, with kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1) and 2 (Count 4); and carjacking, in violation of Title 18, United States Code, Section 2119 and 2 (Count 5). Dkt. 63. On November 5, 2024, defendant pled guilty to the indictment. Dkt. 103. Defendant is scheduled to be sentenced by this Court on March 18, 2025, at 10:00 a.m. Dkt. 103.

**II. Offense Conduct**

With respect to Count Four of the second superseding indictment, on or about March 10, 2021, at Cicero, in the Northern District of Illinois, Eastern Division, and

elsewhere, defendant willfully and unlawfully seized, confined, kidnapped, abducted, and carried away Victim C[1], and otherwise held her for his own purpose and benefit, and in committing and in furtherance of the commission of the offense used a means, facility, and instrumentality of interstate commerce; in violation of Title 18 United States Code, Sections 1201(a)(1) and 2.

With respect to Count Five of the second superseding indictment, on or about March 10, 2021, at Cicero, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant with intent to cause death and serious bodily harm, took a motor vehicle, namely a 2020 Chevrolet Blazer, that had been transported, shipped, and received in interstate and foreign commerce, from the person and presence of Victim C, by force, violence, and intimidation; in violation of Title 18 United States Code, Sections 2119 and 2.

More specifically, on March 10, 2021, at approximately 3:44 a.m., Victim C remote started her Chevy Blazer and then walked out of her home on the 5100 block of West 25th Place in Cicero, Illinois. PSR ¶ 6; GV Exhibit A at 1. Two men, subsequently identified by law enforcement as Andrew Anania and Walter Moran, approached Victim C and asked her for the time. Victim C responded, then got in her car and locked the door. The two men approached the car and stood at the front driver and passenger door. PSR ¶ 6-7; GV Exhibit B, at 13:00-15:10.

The man subsequently identified as Anania, walked to the driver door, pointed a black pistol at Victim C and told her to "open the door." PSR ¶ 7; GV

---

[1] Victim C is designated as Victim C in the second superseding indictment. Victim C was referred to as Victim B for the purposes of the trial of co-defendant Andrew Anania.

Exhibit A at 1; GV Exhibit B at 15:10-16:20.  Victim C, afraid, opened the door. GV Exhibit A  Anania instructed her to scoot over, which she did.  Moran opened the front passenger seat to get in the car, but then Anania instructed him to get in the back seat, which he did.  Anania told Victim C not to try anything.  Anania had difficulty starting the car, and Moran assisted him, telling him how to start it. GV Exhibit A at 1; GV Exhibit B at 16:20 – 18:10, 24:20- 29:30.

Anania instructed Victim C to give Moran her watch and purse, which Victim C did.  GV Exhibit B at 8:03.  The purse contained approximately $200 in cash, as well as credit and debit cards.  *Id.* at 27:00- 27:45; PSR ¶ 7.

Anania and Moran drove to the vicinity of the intersection of South Washtenaw Avenue and West 23rd Place in Chicago. GV Exhibit A, at 2; PSR ¶ 8. Two pedestrians shot at Victim C's Blazer.  Moran returned fire, shooting approximately three times from the back seat of Victim C's car. *Id.*  When Victim C got her car back, she observed that it now had bullet holes in it. GV Exhibit B, at 32:20- 36:00; PSR ¶ 8.

Around this time, Victim C began crying.  PSR ¶ 8; GV Exhibit B, at 36:30- 37:10. Individual A told her to calm down, or he would shoot her, that she was going to die.  *Id.*

Anania and Moran drove onto Interstate 55, exiting on LaGrange Road in Hodgkins Village.  Anania got out of the car to go to the bathroom, while Moran remained in the car, with Victim C and his firearm. PSR ¶ 9; GV Exhibit A. During the drive, Moran provided instructions to Anania. *Id.*   During the drive,

3

Anania took Victim C's phone. *Id.*

Anania drove back to Interstate 55, travelling north and exiting on Harlem. Anania asked Moran what they were going to do with Victim C. Moran said they would drop off Victim C. They dropped off Victim C around Harlem and 47th Street, instructing her not to call anyone and not say anything. Anania and Moran then fled in Victim C's Chevy Blazer. Victim C hid and then called the police. PSR ¶ 9; *Id.*

Victim C's car, a 2020 Chevrolet Blazer with VIN 3GNKBKRS9LS670282 and Illinois registration BL58532, was manufactured in Mexico and therefore was a means, facility or instrumentality of interstate commerce; and therefore was transported, shipped, or received in interstate commerce.

### III. Offense Calculation and Guidelines Range

#### A. PSR Calculation of Offense Level

Pursuant to the 2024 Sentencing Guidelines Manual, the PSR calculates the total offense level as follows (PSR ¶¶19-28):

| | |
|---|---|
| 32 | **Offense Base Level** pursuant to USSG § 2A4.1. |
| +2 | **Dangerous Weapon Used** pursuant to USSG § 2A4.1(b)(3). |
| -3 | **Acceptance of Responsibility.** USSG § E1.1(a); E1.1(b) |
| 31 | **Total Offense Level** |

The government agrees with the PSR's calculation of the offense level.

#### B. Criminal History

Probation and the government agree that the defendant's criminal history

4

score is 14 and his criminal history category is VI. PSR at ¶48.

On or about October 2, 2012, defendant was convicted of aggravated battery of a police officer in the Circuit Court of Cook County and sentenced to 121 days' imprisonment. Pursuant to Guidelines § 4A1.1(b), defendant receives 2 criminal history points. PSR at ¶39.

On or about October 1, 2013, defendant was convicted of resisting a police officer in the Circuit Court of Cook County and sentenced to 40 days' imprisonment. Pursuant to Guidelines § 4A1.1(c), defendant receives 1 criminal history point. PSR at ¶40.

On or about March 26, 2015, defendant was convicted of aggravated assault in the Circuit Court of Cook County and sentenced to 60 days' imprisonment. Pursuant to Guidelines § 4A1.1(b), defendant receives 2 criminal history points. PSR at ¶42.

On or about February 8, 2016, defendant was convicted of driving under the influence of alcohol. Pursuant to Guidelines § 4A1.1(c), defendant receives 1 criminal history point. PSR at ¶43.

On or about June 1, 2016, defendant was convicted of aggravated driving under the influence in the Circuit Court of Cook County and sentenced to 1 year of imprisonment. Pursuant to Guidelines § 4A1.1(b), defendant receives 2 criminal history points. PSR at ¶44.

On or about June 6, 2018, defendant was convicted of aggravated battery of a police officer in the Circuit Court of Cook County and sentenced to 3 years' imprisonment. Pursuant to Guidelines § 4A1.1(a), defendant receives 3 criminal

history points. PSR at ¶45.

On or about August 30, 2022, defendant was convicted of unlawful possession of a weapon by a felon in the Circuit Court of Cook County and sentenced to 3 years' imprisonment. Pursuant to Guidelines § 4A1.1(a), defendant receives 3 criminal history points. PSR at ¶47.

    C.    <u>Advisory Guidelines Range</u>

The government agrees with the PSR's calculation of the defendant's advisory guidelines range as being 188 to 235 months. PSR at ¶116.

**IV.    The §3553(a) Factors Support Imposition of a Sentence of Imprisonment at the High End of the 188 to 235 Month Guidelines Range.**

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[2]  In order to determine the sentence to impose, the court must consider the statutory factors listed in §3553(a)(1)-(7).  One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements.  §3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49

---

[2] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D).

(2007). For the reasons set forth below, the statutory sentencing factors reflect that a sentence at the high end of the Guidelines range of 188 to 235 months is warranted.

    A.    <u>Seriousness, Nature and Circumstances of Offense</u>

The seriousness, nature and circumstances of the offense demonstrate that a Guidelines sentence is warranted. Defendant, along with Anania, targeted a woman walking out of her apartment, on her way to work. They threatened her with a gun and forced their way into her car. Once they had control of the car, they didn't let her leave. They kidnapped her. They forced her to go with them for the next 45 minutes, terrifying her as they engaged in drive-by shootings and drove out to an empty forest preserve. They placed her life in danger when they engaged in a shoot-out. When she cried, they threatened to kill her. They stole her car, they stole her phone, they stole the contents of her wallet. And as Victim C states in her statement to the Court, they stole her peace, her trust in others, her ability to live a normal life without fear. A high end Guidelines sentence would accurately reflect the serious nature of this crime.

    B.    <u>History and Characteristics of Defendant</u>

A high-end Guidelines sentence is warranted and consistent with the history and characteristics of the defendant. Defendant has an extensive history of criminal activity, including 13 prior criminal convictions. PSR at ¶35-47. Those convictions include convictions for being a felon in possession of a firearm, aggravated battery, aggravated assault with a deadly weapon, aggravated battery of a peace officer. Defendant also has pending charges of armed robbery (four counts), aggravated

7

battery (four counts), armed violence (four counts), burglary (two counts) and possession of a firearm by a felon.

According to his half-sister and police reports, defendant is a member of the Latin King Street gang, consistent with defendant's tattoos stating "King Love" and showing a lion. Defendant's arrests reflect gang involvement going back to at least 2009.

    C.    <u>The Need to Protect the Public and Afford Adequate Deterrence and Respect for the Law</u>

The sentence imposed should have specific and general deterrent effects. *See* 18 U.S.C. § 3553(a)(2)(B); *United States v. Mendoza*, 576 F.3d 711, 722 (7th Cir. 2009) (noting that general deterrence is a factor to consider). A high-end Guidelines sentence of incarceration would protect the community from the defendant's violent actions.

On three prior occasions, defendant was sentenced to a year or more of imprisonment (specifically, sentences of 1 year, 3 years and 3 years). None of those previous sentences deterred defendant from kidnapping the victim of this case, engaging in a shoot-out during the kidnapping, and stealing the victim's car. Rather, defendant's violent conduct has escalated in the wake of his previous term of imprisonment. A high-end Guidelines sentence would protect the community from defendant's violent and life-threatening behavior.

It is also important to stress the need for general deterrence. The city of Chicago is plagued with carjackings and firearm violence. The consistent application of federal law is necessary to deter these violent acts. A high-end

sentence would further send a general message of deterrence to ensure that carjackers do not further endanger their victims by kidnapping them. A high-end Guidelines sentence would send the message that violent behavior like that committed by the defendant is behavior that will not be tolerated by the federal government.

## V. SUPERVISED RELEASE

The government recommends that the Court impose a guideline period of supervised release between two and five years. *See* PSR ¶ 120. During that period, the government recommends that the Court impose the following conditions:

### A. Mandatory Conditions, Pursuant to 18 U.S.C. § 3583(d)

- The defendant shall not commit another federal, state, or local crime.

- The defendant shall not unlawfully possess a controlled substance.

- The defendant shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on probation and at least two periodic tests thereafter, up to 104 periodic tests, during each year of supervised release for use of a controlled substance.

- The defendant shall cooperate in the collection of a DNA sample from the defendant at the direction of the United States Probation Office.

### B. Discretionary Conditions, Pursuant to 18 U.S.C. §§ 3583(d) and 3563(b)

The following conditions should be imposed on the basis that they (1) facilitate supervision by the probation officer, which is important here to promote defendant's respect for the law and deter the defendant from future crimes; and (2) are tailored to address mental health and substance abuse issues which, if left untreated, will prevent defendant from successfully reintegrating into society:

- The defendant shall provide financial support to dependents if financially able.

- The defendant shall seek, or work conscientiously, at lawful employment or pursue conscientiously a course of study or vocational training that will equip him for employment.

- The defendant shall refrain from knowingly meeting or communicating with any person he knows to be engaged, or planning to engage in criminal activity, and shall not knowingly meet or communicate with Andrew Anania or Victim C.

- The defendant shall refrain from excessive use of alcohol or any use of a narcotic drug or other controlled substance.

- Defendant shall refrain from possessing a firearm, destructive device or other dangerous weapon.

- Defendant shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.

- Defendant shall refrain from knowingly leaving the federal judicial district where defendant is being supervised, unless granted permission to leave by the court or a probation officer.

- Defendant shall report to the probation office in the federal judicial district to which defendant is released within 72 hours of his release from imprisonment. Defendant shall thereafter report to a probation officer at reasonable times as directed by the court or a probation officer.

- Defendant shall permit a probation officer to visit the defendant at any reasonable time at home; at work; at school; at a community service location; or at another reasonable location specified by a probation officer; and permit confiscation of any contraband observed in plain view of the probation officer.

- Defendant shall notify the probation officer within 72 hours of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer.

- Defendant shall notify the probation officer within 72 hours if arrested, charged with a crime, or questioned by a law enforcement officer.

- Defendant shall submit his person, property, house, residence, vehicle, papers or office to a search conducted by a United States Probation Officer. Defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

- Defendant shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed. The amount of community service shall not exceed 300 hours.

- Defendant shall not incur new credit charges or open additional lines of credit without approval of a probation officer unless defendant is in compliance with the financial obligations imposed by the Court's judgement.

- Defendant shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

- Within 72 hours of any significant change in defendant's economic circumstances that might affect defendant's ability to pay restitution, fines, or special assessments, defendant must notify the probation officer of the change.

- Defendant shall file accurate income tax returns and pay all taxes, interest and penalties as required by law.

- Defendant shall pay to the Clerk of the Court any financial obligation ordered herein that remains unpaid at the commencement of the term of supervised release, at a rate of not less than 10% of the total of defendant's gross earnings minus federal and state income tax withholdings.

- Defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

- If the probation officer determines that defendant poses a risk to another person, the probation officer may require defendant to tell the person about the risk, and defendant must comply with that instruction. Such notification could include advising the person about defendant's record of arrests and convictions and substance use. The probation officer may contact the person and confirm that defendant has told the person about the risk.

- Defendant shall observe one Reentry Court session, as instructed by his probation officer.

These supervised release terms are narrowly tailored to facilitate supervision by the probation officer, deter the defendant from future crimes, support defendant's rehabilitation and reintegration into the community, ensure that he is engaged in lawful pursuits rather than criminal activity.

## VI. CONCLUSION

In view of the Section 3553(a) factors, a sentence at the high end of the Guidelines range of 188 to 235 months is fair, reasonable, and sufficient, but not greater than necessary. For these reasons, the government respectfully requests that this Court impose a Guidelines sentence.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: */s/ Cornelius Vandenberg*
CORNELIUS A. VANDENBERG
Assistant U.S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

Dated: February 27, 2025