IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>         Plaintiff,<br>vs.<br><br>WALTER MORAN<br><br>         Defendant. | Case No. 21 CR 633-2<br><br>Judge Edmond E. Chang |

### DEFENDANT WALTER MORAN'S
### SENTENCING MEMORANDUM

  Defendant Walter Moran, by and through undersigned counsel, respectfully submits his Sentencing Memorandum to the Court. After considering all of the sentencing factors contained in 18 U.S.C. § 3553(a), Walter respectfully requests the Court sentence him to a term of imprisonment below the low end of the advisory guideline range of 188 to 235 months' incarceration as such a sentence is sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a).

  By any reasonable estimation, Walter has had a difficult life. He was the product of a broken home with a father who was incarcerated in Mexico for a drug trafficking crime and a mother who was (understandably) forced to work three jobs to put food on her family's table. Nevertheless, despite the challenges he has faced, Walter has made concerted efforts to be a positive member of his Little Village community, and he is a valued and very much loved part of his family. But along the way, Walter has made mistakes – some of which were very serious, including the matter that brings him before the Court. However, throughout his life, Walter has always been someone who accepts and lives up to those mistakes, strives to learn from them, and

1

works to lead a better life with those lessons learned. He has a family that loves and cares for him deeply and they want him back with them as soon as the law permits. With this as background, Walter now comes before the Court for sentencing.

## I.     Background

On April 24, 2024, a second superseding indictment was filed in this district naming Walter as a co-defendant with Andrew Anania in connection with a carjacking and kidnapping that took place on March 10, 2021. ECF Dkt. #63.[1] The original indictment charging only Mr. Anania was filed on October 7, 2021, Dkt. #1, and the first superseding indictment, again only naming Mr. Anania, was filed on March 9, 2023, Dkt. #30. With respect to the charges against Walter in the second superseding indictment, he was charged in Count Four with kidnapping, in violation of 18 U.S.C. § 1201, and in Count Five with carjacking, in violation of 18 U.S.C. § 2119. Dkt. #63. Walter appeared for arraignment on the second superseding indictment on May 21, 2024, and he was ordered detained pending trial. Dkt. #81. He has been detained ever since.

On November 5, 2024, Walter appeared before the Court and entered a plea of guilty to both Counts Four and Five without the benefit of a plea agreement with the government (a "blind plea"). Dkt. #103. This matter is set for a sentencing hearing on April 22, 2025, before this Court.

## II.    Sentencing Procedure

As this Court is well aware, the primary focus of the sentencing inquiry is to determine a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553. 18 U.S.C. § 3553(a). To assist with this determination, the statute provides seven factors the Court should evaluate in considering an appropriate sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[1] References to "ECF Dkt. #" in this memorandum refer to docket entries for this criminal case.

(2) the need for the sentence imposed: (i) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (ii) to afford adequate deterrence to criminal conduct; (iii) to protect the public from further crimes of the defendant; and (iv) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offenses committed by the applicable category of defendant as set forth in the [United States Sentencing Guidelines];

(5) any pertinent policy statement issued by the United States Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1) – (7).

As is set forth below, the application of these factors to this matter demonstrates that a custodial sentence below the advisory guideline range of 188 to 235 months is "sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553.

### III. Sentencing Position

    A. <u>Factual Objections to the Presentence Investigation Report</u>

On February 7, 2025, the Probation Office filed the Presentence Investigation Report ("PSR") in this case. Walter has a number of factual objections to the contents of the PSR:

- First, on page 3 of the PSR in the "Identifying Data" section, there is an incorrect statement that Walter is "Black or African-American" and that he is of "Non-Hispanic origin." This is incorrect. As the PSR later notes, *see* PSR ¶ 84, Walter is properly characterized as "White/Hispanic." Walter asks that this language be amended to correctly identify his race.

- Next, on page 10, paragraph 42, the PSR describes a prior conviction for aggravated assault which states that, "the defendant and another individual engaged in a verbal altercation with an off-duty police officer, attempted to enter his vehicle, and shouted gang slogans." Walter respectfully disagrees with the PSR's description of this offense. As he remembers it, Walter was involved in an altercation with a third party but this altercation did not involve the off-duty police officer. It was a dispute between the other individual and himself. While Walter acknowledges that he was convicted of this offense and he did receive the sentence of 60 days in jail as reported in the PSR (which notably was a conviction that neither the defense nor the government were aware of, as reflected in their respective versions of the offense), he does object to the characterization of the offense contained in the PSR.
- Next, on page 13-14, paragraph 52, the PSR describes a pending criminal case against Walter in the Circuit Court of Cook County. The Probation Officer states that he was unable to collect information about this arrest. So the Court is aware, the factual circumstances of this pending Cook County state case are the same as what brings Walter before this Court. In other words, the Cook County State's Attorney's Office has also charged Walter with state offenses arising from the March 10, 2021, kidnapping/carjacking for which Walter is soon to be sentenced by this Court.
- Next, on page 16, paragraph 73, Walter requests that the following biographical data be modified: Jenny Lopez is Walter's full sister, not half-sister. The correct spelling for Walter's for his half-sister who passed away in 2007 is Mayra Moran and not Myra Moran.

4

- Next, on page 17, paragraph 79, Walter requests that the following biographical data be modified: Walter's 13 year old son's first name is spelled "Rey" and not "Ray" and his 10 year old son's first name is spelled "Leonel" and not "Lionel."

- Finally, on page 18, paragraph 85, Walter would like the Court to know that he has had the "King Love" tattoo on his knuckles removed and he is in the process of having the five large dots on his left hand removed as well.

B.   Statement Regarding the Sentencing Guideline Calculations

On page 6 of the PSR, the Probation Officer concluded that Counts 4 and 5 should be grouped for guideline purposes, pursuant to USSG § 3D1.2(c). PSR ¶ 18. Though Walter in his Defendant's Version of the Offense concluded that the two counts were not groupable under Section 3D1.2, after reviewing the Probation Officer's analysis, Walter agrees that Counts 4 and 5 should be grouped.

Consequently, Walter agrees that the only offense for which the advisory guideline range need be calculated is Count 4 – the kidnapping count, which is the most serious offense for guideline purposes of the two he pled guilty to. Walter agrees that the base offense level for Count 4 is 32, pursuant to USSG § 2A4.1(a). The PSR then concludes that the offense level should be increased two levels, pursuant to USSG § 2A4.1(b)(3) because a dangerous weapon (firearm) was used. To support this enhancement, the PSR relies on two separate justifications – the first of which is that the victim of the offense reported that "the defendants possessed a firearm and pointed it at her when asking her to open the [car] door." The second justification is that the victim of the offense stated that "pedestrians fired shots at her vehicle, causing [Walter] to respond by firing shots at the pedestrians." PSR ¶ 20.

With respect to the first justification, Walter is in no position to contest it, other than to clearly state that he personally was not the individual who pointed a firearm at the victim "when asking her to open the door." Walter understands that Mr. Anania was convicted by a jury of both participating in the March 10, 2021, carjacking of the victim as well as possessing a firearm in furtherance of a crime of violence. Applying the well-known principles of conspiracy law, Walter further understands the actions of the other participant in the carjacking are legally imputed to him, especially considering that he himself has pled guilty before this Court of participating in the March 10 offense. Therefore, Walter has no objection to the imposition of the two-level use of a dangerous weapon enhancement as reflected in the PSR based on the first justification.

However, Walter does object to the second justification. He disputes the assertion that he fired shots from the passenger seat of the carjacked vehicle in response to shots fired at the car by pedestrians on the street. While Walter acknowledges that the evidence adduced at Mr. Anania's trial may suggest that some sort of gunplay took place during the carjacking, that is contrary to Walter's recollection of the event. Because the evidence on this shooting is inconclusive, Walter objects to the Court basing the two-level use of a dangerous weapon enhancement on this second justification. Notably, this issue is largely moot as the enhancement is appropriately imposed based on the first justification.

With the two-level use of a dangerous weapon enhancement, the adjusted offense level is 34. Applying the standard three-level reduction for acceptance of responsibility and timely plea, the final offense level is 31. Walter's criminal history category is VI. With a final offense level of 31 and a criminal history category of VI, Walter agrees with the PSR (and the government) that the advisory guideline range in this case is 188 to 235 months.

C. The Application of the 3553(a) Factors

1. Nature and Circumstances of the Offense and History and Characteristics of the Defendant

Both the nature and circumstances of the offense and William's personal background compel the conclusion that a sentence below the advisory guideline range of 188 to 235 months' imprisonment is the only appropriate sentence in this case. Starting first with the nature and circumstances of the offense, Walter is deeply and sincerely remorseful for his actions in this case. He knows that it was an incredibly serious crime that has had, and will continue to have, a lasting impact on the victim's life. He appreciates that the victim of this offense was completely innocent and she did not deserve to have her life turned upside down in the early morning of March 10, 2021. Walter has read the victim's statement and he knows that she "is never going to be the same" and that this offense has "taken away from [her] the ability to live normal." Walter is deeply sorry for this. As he makes clear in his letter to the Court (attached as Exhibit A), "I negatively hurt my victim in different aspects of her life by taking her vehicle – it's something I have to live with. I only pray that she can forgive me for making this decision that brough all of us here." Walter wishes he could back in time to March 10 and tell that version of himself about to commit this crime to stop, think about his family and his three boys, and walk away. Obviously, he cannot do that but what he can do is acknowledge the seriousness of his mistake, apologize with all his heart to the victim of the offense, and move on with his life so he can get back to his family as soon as he can.

Turning next to his history and characteristics, as the PSR makes clear, Walter has had an incredibly difficult, and at times tragic, life. He grew up in the Little Village neighborhood of Chicago. PSR at ¶ 75. His father was separated from his family when Walter was only two years old, *see id*, because he had been arrested for a drug trafficking crime in Mexico (for which his

7

father served 15 years' incarceration in a Mexican prison). *Id.* Because his father was away, Walter's mother had to work three jobs just to support he and his siblings. This resulted in Walter unfortunately associating himself with questionable individuals in his neighborhood throughout much of his life. Though he has taken affirmative and positive steps to remove himself from that life, including as discussed above removing gang-related tattoos on his body, the fact remains that Walter has a significant criminal history (discussed in more detail in the PSR), for which he is not proud. He cannot run from his past but what Walter can do is commit himself to a better life moving forward. His genuine desire to do so is reflected in two of the exhibits to this memorandum. First, in his heart-felt and personal written statement to the Court,[2] Walter explains how the circumstances of his life evolved over time, including struggles with his mental health, that ultimately resulted in his current understanding that he needs to learn from his prior mistakes and move forward so he can be a positive impact on both his family and his community. *See* Exhibit A. And it is his family that is central to his desire for positive, forward-looking change. As he writes in his own words, "I can't finish this letter without mentioning my boys because whether I'm there or in prison, they will still be a part of me. I would like to be free and spend time with them, show them there's more to life, and hopefully change their path – break the chain of generations going to jail." *Id.*

Second, while in jail, Walter has taken affirmative steps to further his education so he can also be a productive member of the work force upon his release from prison. As the certificates of completion provided in Exhibit C to this memorandum demonstrate, Walter has used his time in jail to better himself. He has taken math, science, and social science classes all with the goal of

---

[2] Walter also intends on making an oral allocution to the Court during his upcoming sentencing hearing.

8

securing his GED. He has also taken parenting, self-awareness, and anger management classes. Further, he has taken a number of specific classes dedicated to success in the construction industry – a field Walter is considering entering upon release from prison. In addition to these vocational classes, Walter has also taken culinary classes to further refine his cooking skills.

In light of all of this, what it is most important for this Court to appreciate is that, at his core, Walter is a man who loves and lives for his family and he wants to do better by them. Much of what he has done in his life, including some of the bad things, has been to try to provide a better life for the people he cares most for, including his children and his close family members. The cold pages of a PSR can only provide the Court so much insight into what type of man Walter Moran truly is. Thankfully, the people who love Walter the most and want him returned to them as soon as possible have written letters to the Court (which are attached to this memorandum as Exhibit B) explaining in rich detail who Walter really is.

The Court has the benefit of hearing from Walter's close family members, including his children, his sisters, and his nephews. All tell stories about how important Walter is to them, be it building pillow forts in the living room, playing video games, taking walks in the park, helping with homework, or cooking at large family gatherings. *See* Exhibit B. Particularly poignant are the statements of Walter's son Rey. In his letter to the Court, Rey explains how Walter taught him "how to be a man" and that Walter was his "mentor." Walter's sister Jenny Lopez and his many nephews tell similar stories about the positive impact Walter has had on their lives and their earnest desire that Walter be returned to them as quickly as possible. *Id.*

Walter is a solid and dependable man who loves his family and his boys dearly. He has made his fair share of mistakes throughout his life but those mistakes do not define him, his actions

9

do. And his actions reflect a man who can do the most good for his family and his community by getting home as soon as the law permits.

Saying all of this, however, is not in any way intended to minimize the seriousness of the offenses for which Walter stands convicted. He is deeply apologetic and remorseful for his involvement in this offense. He made a massive mistake and he is going to spend a significant amount of the remainder of his life in a federal prison paying for that mistake. A custodial sentence below the low end of the advisory guideline range is more than sufficient to address the seriousness of Walter's conduct in this case.

      2.      <u>Need for Sentence to Reflect Seriousness of the Offense, Need for General and Specific Deterrence, and Need for Training Services</u>

As noted elsewhere in this memorandum, Walter understands and appreciates that the offenses of kidnapping and carjacking are immensely serious (and potentially very dangerous) and, as a result, the government has a legitimate interest in sending a clear message to the community that engaging in such conduct carries meaningful repercussions. Walter appreciates that he will be sentenced to a significant term of imprisonment as a result of his participation in this offense to reflect its seriousness. The question is what that sentence should be. While the government has indicated that it feels a sentence at the high end of the advisory guideline range is appropriate, as stated herein, even though the offenses of conviction are very serious, a sentence below the low end of the guideline range is sufficient to reflect the gravity of the conduct Willian engaged in.

With respect for the need to promote general and specific deterrence, again, given the circumstances of this specific case, a term of incarceration below the low end of the guideline range sends a strong message to the community that knowingly participating in carjackings carries with it a lengthy punishment and deprivation of liberty. A warning that anyone who decides to

carjack someone will go away to a federal prison for anywhere between ten and fifteen years is a strong one; the community is certainly on notice.

With respect to the issue of specific deterrence, Walter personally has learned his lesson. While it is true his PSR has a fairly lengthy section devoted to his criminal history, as his letter to the Court makes clear, he has decided to turn his life around. He wants to better himself in prison (which he has already taken steps to do) and serve his sentence so he can return home to his family and friends, who love him dearly, as quickly as the law and this Court permit. Walter has no interest or desire to ever darken a federal courtroom's (or any other courtroom for that matter) door ever again. As a result, a below guideline sentence is sufficient to meet the needs of deterrence in this case.

## IV. Conclusion

WHEREFORE, after reviewing all of the relevant factors contained in 18 U.S.C. § 3553(a), Walter Moran respectfully requests that this Court sentence him to a term of incarceration at a reasonable point below the low end of the applicable advisory guideline range.

Dated: April 7, 2025                               Respectfully submitted,


*/s/ Christopher P. Hotaling*
Christopher P. Hotaling
chotaling@nixonpeabody.com
**NIXON PEABODY LLP**
70 West Madison Street, Suite 5200
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405
*Counsel for Walter Moran*